IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BRANDY M.,[1]**

      Plaintiff,                           Civ. No. 6:18-cv-01139-CL

            v.                           **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Brandy M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income (SSI).  For the reasons below, the Commissioner's decision is REVERSED and REMANDED for immediate calculation of benefits.

## BACKGROUND[2]

      Born November 11, 1976, Plaintiff was thirty-seven years old on the application date. Tr. 23. She has a tenth-grade education. Tr. 224. She has no past relevant work experience. Tr. 23

      On July 29, 2014, Plaintiff applied for Supplemental Security Income, alleging disability beginning January 1, 2005. Tr. 206-11.1 The agency denied the claim both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 149-56, 161-66. She appeared for a hearing

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 11.

before the ALJ in May, 2017. Tr. 66-102.  On September 19, 2017, the ALJ issued a decision

denying Plaintiff's claim for benefits. Tr. 12-30 Plaintiff requested review of the hearing

decision, which the Appeals Council denied in April 2018. Tr. 204-05, 1-6. Accordingly, the

ALJ's decision became the final decision of the agency, from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.     Is the claimant performing "substantial gainful activity"? 20 C.F.R.
       §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
       significant mental or physical duties done or intended to be done for pay or
       profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such
       work, she is not disabled within the meaning of the Act. 20 C.F.R.
       §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
       substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
       regulations?  20 C.F.R.  §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
       expected to result in death, an impairment is "severe" if it significantly
       limits the claimant's physical or mental ability to do basic work activities.
       20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or
       must be expected to last for a continuous period of at least 12 months. 20
       C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
       impairment, the analysis ends. 20 C.F.R.  §§ 404.1520(a)(4)(ii);
       416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
       proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55;

*Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1.  Plaintiff has not engaged in substantial gainful activity since July 29, 2014, the
    application date.

2.  Plaintiff has the following severe impairments: degenerative disc disease of the
    cervical spine; degenerative joint disease of the left ankle and left knee, status post
    multiple ankle surgeries and hardware placement; affective disorder; anxiety disorder;
    and substance addiction disorder.

3.  Plaintiff does not have an impairment or combination of impairments that meets or
    medically equals the severity of one of the listed impairments.

4.  Plaintiff has the residual functional capacity to perform a range of light work as
    defined in 20 CFR 416.967(b) except she can occasionally lift/carry up to 25 pounds,
    and up to 20 pounds frequently. She can stand/walk up to 6 hours, and sit for up to 6
    hours in an 8-hour workday (with normal breaks). She requires the option to alternate
    between sitting and standing at will while remaining on task. She must avoid
    climbing ladders, ropes, or scaffolds. She is limited to simple, routine tasks involving
    a reasoning level of 2 or less. She can tolerate no more than occasional contact with
    coworkers and the general public.

5.  Plaintiff has no past relevant work.

6.  Plaintiff was born on November 11, 1976 and was 37 years old, which is defined as a
    younger individual age 18-49, on the date the application was filed.

7.  Plaintiff has a limited education and is able to communicate in English.

8.  Transferability of job skills is not an issue because Plaintiff has no past relevant work.

9.  Considering Plaintiff's age, education, work experience, and residual functional
    capacity, there are jobs that exist in significant numbers in the national economy that
    the Plaintiff can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act.  Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501).  Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted).  Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless.  *Id.* at 1055-56.  "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*

*v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set

aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968).  Under sentence four of 42

U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1.  Did the ALJ properly evaluate the opinions of Plaintiff's medical sources?

2.  Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

3.  Did the ALJ properly formulate the RFC?

The Court finds that the ALJ erred by improperly rejecting the medical opinion evidence,

and, as a result, failing to properly formulate the RFC to include all of Plaintiff's social and

mental limitations. Plaintiff's counsel posed the proper hypothetical to the vocational expert,

eliminating the need for remand for further proceedings. Because these errors require remand for

benefits, it is not necessary for the Court to consider Plaintiff's other claims of error by the ALJ,

including claims that the ALJ failed to properly evaluate medical evidence and subjective

symptom testimony regarding Plaintiff's physical limitations.

**I.       The ALJ failed to properly credit the medical opinion evidence in the record.**

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202.; *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Thus, even if contradicted by another doctor's opinion, the treating or examining doctor is nevertheless "entitled to deference" and may be rejected only with specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631, 633 (9th Cir. 2007); *Ghanim*, 763 F.3d at 1160–61; *accord Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Holohan*, 246 F.3d. at 1202. However, an ALJ considers all relevant medical evidence and is responsible for resolving its conflicts. 20 C.F.R. §§ 404.1527, 416.927; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

### a.  The ALJ failed to properly evaluate the opinion of Dr. Lake.

Consultative psychologist, Claudia Lake, Psy.D., performed a consultative psychological examination in May 2015. Tr. 443. She based her opinion on a review of available medical records, clinical interview, and mental status examination. Tr. 443-45. Plaintiff reported a history of domestic violence, multiple sexual assaults, posttraumatic stress disorder, and panic attacks. Tr. 443-44. She reported growing up in an abusive environment and dropping out of school after the ninth grade. Tr. 445. She last worked in 2001 and stated that her disabilities "got in the way of her continuing to work." Tr. 445. She endorsed occasional cannabis use; she had been sober from alcohol and methamphetamines for five years. Tr. 445. She attended church and was able to

dress and bathe herself. Tr. 445. Her hobbies included crossword puzzles and gardening when able. Tr. 445.

Dr. Lake noted that Plaintiff's presentation of her history was often scattered, confusing, and dramatic. Tr. 444. She went on a mildly disorganized tangent about her history of abuse. Tr. 445. She appeared much older than her stated age. Tr. 445-46. She nervously held her hands in her lap, had a quiver when breathing, and appeared quite nervous. Tr. 446. Dr. Lake noted mildly tangential thought process and believed Plaintiff's reported auditory and visual hallucinations may be related to medication withdrawal. Tr. 446. Plaintiff reported that her mood was filled with fear, anxiety, panic, stress, and a belief that people were staring at her. Tr. 446. Dr. Lake observed that Plaintiff's affect was congruent with her reported mood. Tr. 446. Her immediate memory and recall appeared mildly impaired. Tr. 446. She was aware of current events but did not present them clearly. Tr. 446.

Dr. Lake diagnosed posttraumatic stress disorder, unspecified depressive disorder, agoraphobia, alcohol use disorder in sustained remission, stimulant use disorder in sustained remission, and borderline personality disorder. Tr. 447. She opined that Plaintiff's medical issues exacerbated her mental health symptoms, and that ongoing daily stress kept her "destabilized." Tr. 447. She further opined that Plaintiff's prognosis was poor, and that she would have difficulty with even simple tasks due to anxiety and depression symptoms. Tr. 447-48. Plaintiff would also have difficulty accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instructions, maintaining regular attendance in the workplace, completing a normal workday or workweek without interruptions from a psychiatric condition, and dealing with additional stress encountered in the workplace. Tr. 448.

The ALJ discounted this examining medical source opinion in favor of the opinion of a non-examining state agency consultant, Dr. Dennis.  Michael Dennis, Ph.D., reviewed the medical record and assessed "moderate limitation" in Plaintiff's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Tr. 142-43.

"In reconciling [Dr. Lake and Dr. Dennis's] disagreement, the [ALJ] note[d] that more recent evidence obtained at the hearing level indicat[ed] the claimant exhibited significant intellectual and social functioning within a clinical setting." Tr. 22. The ALJ then specifically noted a single mental health treatment note from September 2015, which documented cognitive function within normal limits and a "neat, clean, pleasant, accessible, and fully oriented" presentation with "effective" reasoning and "good" attention and concentration. Tr. 22 (citing Tr. 455). The ALJ found that those "clinical findings" tended to support Dr. Dennis' opinion that the claimant could reasonably sustain simple tasks involving limited social interaction. Tr. 22. That reasoning is problematic, however, because it disregards Dr. Lake's own examination findings, upon which she based her opinion, in favor of a one-time behavioral screening assessment from a

non-acceptable medical source[3]. That evidence cannot constitute substantial evidence inconsistent with Dr. Lake's observations of scattered, confusing, nervous, and dramatic presentation; mildly tangential thought process; fearful, anxious, panicked, and stressed mood with congruent affect; and mildly impaired immediate memory and recall. Tr. 444-46. Indeed, the record documents numerous clinical findings consistent with Dr. Lake's opinion, including pressured speech, depressed mood, anxious affect, impaired memory, and tearfulness. E.g., Tr. 453, 452, 502, 511, 514. Thus, the ALJ improperly relied on a single medical record to reject Dr. Lake's informed opinion.

Additionally, even Ms. DeVilliers, QHMP, Plaintiff's treating therapist, who purportedly wrote the single contradicting mental health treatment note from September 2015, reported in early 2016 "that the claimant would likely have marked difficulty maintaining attention and concentration, maintaining regular attendance, or completing a normal workday and workweek without interruptions form psychologically based symptoms." Tr. 22. This opinion is discussed further below.

Finally, the ALJ identified no basis to reject Dr. Lake's opinion that Plaintiff would have difficulty accepting instructions from supervisors, *see* tr. 448, which is in fact consistent with Dr. Dennis's opinion that Plaintiff was "moderately limited" in her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 143.  As discussed below, Dr. Lake's opinion supports a finding of disability; based on vocational expert testimony, this was a harmful error requiring remand for benefits.

b. **The ALJ failed to properly evaluate the opinion of treating therapist Dianne Devilliers, QMHP.**

---

[3] The ALJ incorrected attributed this note to Dianne DeVilliers, Plaintiff's treating mental health provider, but the note in question was actually signed by Cindy Simmons.  It does not appear that Ms. Simmons regularly treated Plaintiff.

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); see 20 C.F.R. § 416.902(a), (d). While not entitled to the same deference as "acceptable" medical sources, statements from "other" medical sources relevant to a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014).

> The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. [20 C.F.R. § 416.927(f)]; SSR 06-3P. Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor. Id. § [416.927(c)(2)–(6)].

*Revels*, 874 F.3d at 655. "Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." 20 C.F.R. § 416.927(f)(1). As such, to reject the "other" medical source statement, the ALJ must identify germane reasons supported by substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Dianne DeVilliers, QMHP, treated Plaintiff in weekly therapy sessions, although Plaintiff had cancelled four or five appointments in the prior four months. Tr. 458, 457. Plaintiff's diagnoses included posttraumatic stress disorder and borderline personality disorder. Tr. 462. Her signs and symptoms included fear of going out without her spouse, emotional lability, worry, fear of men, guilt, sense of hopelessness, insomnia, and poor self-esteem. Tr. 458. She

was emotionally reactive and defensive with perceived criticism. Tr. 458. Ms. DeVilliers opined that Plaintiff was markedly limited in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 460-62. She also opined that Plaintiff was moderately limited in the ability to respond appropriately to changes in a work setting. Tr. 462.

The ALJ afforded Ms. DeVilliers' opinion "partial weight," reasoning that "it appear[ed] to rely uncritically on the claimant's subjective complaints of acute psychosocial stressors – rather than the treatment provider's own clinical findings cited above." Tr. 23. Here, the ALJ referenced the basis for rejecting Dr. Lake's opinion—that is, the September 2015 behavioral health assessment signed by Cindy Simmons, not Ms. DeVilliers. Tr. 22, 455. Contrary to the ALJ's finding, Ms. DeVilliers' treatment notes document clinical findings of pressured speech, depressed mood, anxious affect, impaired memory, and tearfulness. E.g., Tr. 453, 452, 502, 511, 514. Furthermore, there is no evidence to support the conclusory finding that Ms. DeVilliers relied "uncritically" on Plaintiff's own subjective reports. Ms. DeVilliers in fact indicated that there were several areas that she felt unable to determine the severity of Plaintiff's functional limitations. Tr. 460-63. The ALJ therefore erred in rejecting Ms. DeVilliers' "other" medical source opinion without reasons that are germane and supported by substantial evidence. When properly credited, Ms. DeVilliers' opinion is consistent with Dr. Lake's opinion, and it supports a finding that the severity of Plaintiff's mental limitations precludes her from sustaining in a full-time, competitive work setting.

    **c. The ALJ failed to properly evaluate the opinion of Dr. Nolan.**

Consultative physician, Raymond Nolan, M.D., performed a physical examination in April 2015. Tr. 427. The ALJ discounted Dr. Nolan's opined restrictions in favor of the less-restrictive opinion of non-examining state agency consultant, Roy Brown, MD. Tr. 21-22.   The ALJ reasoned that the less-restrictive assessment reasonably accounted for Dr. Nolan's own findings, but the ALJ did not explain how those findings constitute either a legitimate basis to reject Dr. Nolan's medical opinion, nor substantial evidence inconsistent with that opinion. However, because other errors regarding Plaintiff's mental and social limitations require remand for payment of benefits, the Court does not need to explore the extent of this error in-depth, nor should this case be remanded for further proceedings to determine the extent of Plaintiff's physical limitations.

II.    **The ALJ failed to properly account for Plaintiff's mental and social limitations in the RFC, and therefore posed an incomplete hypothetical to the vocational expert.**

If the claimant proves that she is unable to perform any past relevant work, or if she has no past relevant work, as in this case, the burden shifts to the Commissioner to prove that the claimant is capable of working an eight-hour day at some alternate job within her RFC. *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). To meet the Commissioner's burden, the ALJ may elicit testimony from a vocational expert ("VE"), but the hypothetical posed to the VE must account for all of the claimant's limitations supported by the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2005). Similarly, the ALJ is required to include all restrictions in the residual functional capacity determination. *See* 20 C.F.R. § 416.945. In this case, the Commissioner cannot meet its burden at step five of the sequential analysis because the ALJ posed a defective hypothetical to the VE and assessed an RFC that exceeds "the concrete

limitations in the medical opinions." *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. Appx. 15, 17–18 (9th Cir. 2012).

As discussed, the ALJ identified no basis to reject Dr. Lake and Dr. Dennis's opinions that Plaintiff was limited in her ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. 143, 448. The ALJ did not address this portion of either opinion. *See* Tr. 22.   The ALJ then failed to account for any limitation in Plaintiff's ability to respond appropriately to supervision in the hypothetical posed to the VE and residual functional capacity finding. *See* Tr. 93-94, 20. As a result, the Commissioner cannot meet its burden at step five of the sequential analysis, as the RFC finding exceeds "the concrete limitations in the medical opinions." *Rogers*, 490 Fed. Appx. at 17-18. That error is not harmless: as the VE testified, there is a very low tolerance for workers to be off-task due to panic symptoms in response to criticism from supervisors —even just 2% of the workday precludes employment. Tr. 100.  While the Commissioner attempts to argue that the "moderate" limitation assessment by Dr. Dennis does not require inclusion in the RFC, it is clear from the VE testimony that even a mild limitation in this area would prevent competitive employment.  This was harmful error requiring remand.

### III.    This case is remanded for immediate payment of benefits.

The Social Security Act empowers courts to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A court may exercise its discretion to reverse and remand a case for an award of benefits, rather than for further proceedings, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ failed to provide legally sufficient reasons for rejecting medical or testimonial evidence, and (3) if the improperly

discredited evidence were credited as true, the ALJ would be required to find the claimant

disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020-23 (9th Cir. 2014).

  The discretionary nature of the credit-as-true rule "allows flexibility to remand for further

proceedings when[, although all three conditions of the rule have been met,] the record as a

whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of

the Social Security Act." *Id*. at 1021. Such flexibility "aligns the credit-as-true rule, which

preserves efficiency and fairness in a process that can sometimes take years before benefits are

awarded to needy claimants, with the basic requirement that a claimant be disabled in order to

receive benefits." *Id*.; *see Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the

Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play

again' system of disability benefits adjudication.").

  As discussed above, the ALJ erred by improperly rejecting the medical evidence,

including the opinions of Dr. Lake and Dr. Dennis, as well as treating mental health care

provider Ms. DeVilliers.  These opinions are consistent with each other, and with the record as a

whole; they should be credited as true.  In particular, Plaintiff's social limitations regarding her

ability to accept instructions and respond appropriately to criticism from supervisors are well

documented.  When a hypothetical containing these limitations was posed to the vocational

expert, he confirmed that even a small limitation in this area would preclude employment:

> Q: If this hypothetical individual… would occasionally have
> to leave the situation due to panic symptoms in response to…
> criticism from supervisors they would occasionally have to remove
> themselves from the situation, would that give you more information
> that might be helpful?
> A: I can tell you this, you know, occasional is a range from
> 1 to 33 percent, but I think given the -- what I consider the
> vocationally dire circumstances that you describe, even a couple --
> even a couple percentages -- percentage of the time if that behavior

> exhibited itself, I think that would be really inappropriate and unacceptable in competitive work.

Tr. 100.  Based on this response, there is no need to remand this case for further development of the record.  Plaintiff's limitations preclude her from competitive employment.  The case is reversed and remanded for immediate payment of benefits.

Plaintiff raises other issues and errors by the ALJ, however, based on the above assessment, the Court need not consider whether there are alternative reasons to remand the case.

**ORDER**

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for immediate calculation of benefits.

It is so ORDERED and DATED this 30th day of June, 2020.


<u>/s/ Mark D. Clarke</u>
MARK D. CLARKE
United States Magistrate Judge